UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ROBIN OLIVER,                                  )
                                               )
                 Plaintiff,                    )
                                               )
v.                                             )          Case No. 12-CV-0585-CVE-PJC
                                               )
THE WILLIAMS COMPANIES, INC.,                  )
                                               )
                 Defendant.                    )

OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support

(Dkt. # 36).  Defendant The Williams Companies, Inc., (Williams) seeks summary judgment on all

of plaintiff's claims, and it argues that plaintiff has no evidence that Williams discriminated against

her because of a disability or that Williams took any adverse employment action against her because

she sought to take leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA).

I.

Robin Oliver was hired by Williams in 1998, and during the last two years of her

employment with Williams she worked as a senior records analyst. Dkt. # 36-1, at 4, 13.  Oliver

worked in the Records Group, specifically a division of Williams called Records Information

Management (RIM), and her direct supervisor was Walt Fielding. Id. at 15-16.  As a senior records

analyst, Oliver was responsible for "providing Record Center administrative assistance, ensuring

that RIM policies and procedures are followed related to physical records, reviewing and monitoring

the records management indexing system for accuracy, requesting records from storage and

identifying records for destruction." Dkt. # 36-2, at 55.  Oliver testified in her deposition that her

job kept her "very busy" on a regular basis.  Dkt. # 45-1, at 32.  One of the key aspects of Oliver's position in the Records Group was the time-sensitive nature of requests made by Williams' employees or customers.  Dkt. # 36-1, at 28-29.  The Records Group often received records requests with a two week deadline to fulfill the request, but attorneys involved in litigation regularly requested records on short notice.  Id.  Oliver's shift usually began at 8:30 a.m. and her shift ended by 5:00 p.m.  Dkt. # 36-1, at 19.  Regardless of actual hours worked, Oliver was paid for a 40 hour work week unless she noted an exception on her time records.  Dkt. # 45-12, at 4.  It was plaintiff's responsibility to keep track of her time and report any exceptions if she worked more or less than 40 hours per week.  Dkt. # 36-4, at 7; Dkt. # 45-12, at 4.  Oliver stated in her deposition that the employee was responsible for reviewing his or her hours, updating the time records to note any time off, and submitting it to his or her supervisor for review every two weeks.  Dkt. # 36-1, at 116-18.

Williams provided its employees a written handbook containing its employment policies, including its FMLA policy, and Oliver had a copy of this handbook throughout her employment. Dkt. # 36-1, at 7.  The handbook states that employees are entitled to 12 weeks of "unpaid, job-protected leave . . . for certain family and medical reasons" during any rolling 12-month period, and the "12-month period is measured looking back from the commencement of your leave." Dkt. # 36-2, at 49. To become eligible for FMLA leave, an employee had to work at least 1,250 hours during the 12 months preceding the request for leave.  Id.  Williams provides its employees leave for illness or injury, separate and apart from the FMLA, and it also provides its employees short term disability (STD) benefits if leave is taken for a serious health condition.  Id.  Williams requires its employees to use any available paid time off while an employee is on FMLA leave.  Id.  Williams used a third-party administrator to manage its FMLA policy, and the third-party administrator would determine

if an employee was eligible for FMLA leave.  See Dkt. # 36-1, at 46; Dkt. # 36-2, at 64.  From 2007 to 2010, the third-party administrator for Williams' FMLA program was UnumProvident Corporation (Unum), and CIGNA Leave Solutions (CIGNA) became the third-party administrator in 2011.  Dkt. # 36-6, at 5.  The FMLA policy in place in 2011 states that "[t]his program will be interpreted in accordance with the [FMLA] and its related regulations.  This program is not to be construed as a guarantee of continued employment in any particular capacity." Dkt. # 36-2, at 130.  When a request for FMLA leave was submitted by an employee, the third-party administrator relied on time records supplied by Williams from its payroll system.  Dkt. # 36-6, at 5.  Oliver testified in her deposition that she viewed FMLA leave as "earned" based on the number of hours worked, and she believed that her FMLA leave was stored or "banked" for future use.  Dkt. # 36-1, at 9.

Beginning in October 2009, Oliver experienced health problems related to an undiagnosed abdominal ailment.  Id. at 55.  Oliver gave notice to Unum that she would be filing an STD claim.  Dkt. # 36-2, at 74.  Oliver did file a claim for STD benefits and she requested FMLA leave, and both requests were approved.  Id. at 84.  Over the next year, plaintiff intermittently took FMLA leave due to her abdominal ailment.  Id. at 91, 104, 106.  Internal communications between Williams' employees suggest that they were concerned about the amount of work that Oliver had missed and whether Williams could fill Oliver's position with a permanent employee while she was gone.  Dkt. # 45-5.  Although Oliver had taken FMLA leave between September 2009 and September 2010, Oliver's supervisor inquired whether Oliver was actually entitled to FMLA leave for all of the leave taken during this time period.  Id.  Chris Beck, a benefits specialist for Williams, investigated the matter and it appeared that plaintiff may have taken unauthorized leave.  Id.  Beck suggested that progressive discipline for absenteeism should be considered if Oliver continued to miss work.  Id.

Oliver returned to work in September 2010 and, on September 14, 2010, Williams sent her a letter to notify her of available FMLA leave, paid time off, and short term disability benefits remaining as of that date. Id. at 119. Over the previous year, Oliver had received STD benefits for 89 days of missed work.[1] Id. The letter also advised plaintiff that she had 11 weeks and one day of FMLA leave available over the next twelve months.[2] Id. After returning to work, Oliver continued to miss work due to her abdominal ailment, and her time sheets verify that she took a substantial amount of paid time off between September 2010 and January 2011. Dkt. # 45-15, Dkt. # 45-16. Oliver claims that Williams' time records are inaccurate because several weeks state that she worked "0.00" hours, even though she claims that she was actually at work. Dkt. # 45, at 11. Williams has submitted the affidavit of Susan Hamil, a benefits analyst at Williams, who explains that an employee's time records will always state "0.00" if the employee works a standard or "default" work week, and the time records include a specific calculation of hours worked only if the employee records exceptions during the two week pay period. Dkt. # 49-2. Williams has also provided payroll records showing that Oliver was paid for the disputed weeks which her time records show that she worked "0.00" hours, and Hamil states that the payroll records were provided to Williams' third party administrator. Id. This is consistent with the evidence cited by Oliver that non-salaried employees such as Oliver

---

[1]     Plaintiff disputes defendant's calculation of the number of days she missed work based on her belief that defendant's records are "notoriously inaccurate." Dkt. # 45. However, the letter plainly states that plaintiff missed 89 days of work and plaintiff has offered no evidence to refute this calculation. See Dkt. # 36-2, at 119.

[2]     Plaintiff subsequently received a letter from Unum stating that she had five weeks and three days of FMLA leave remaining as of September 13, 2010. Dkt. # 45-32. This is inconsistent with the information provided to plaintiff by Williams.

4

were automatically credited for a 40 hour work week if no exceptions were listed by an employee on his or her time records.  Dkt. # 45-12, at 4.

On January 4, 2011, Oliver called her supervisor, Fielding, to report that she would be unable to work that day due to her abdominal ailment.  Dkt. # 36-5, at 2.  Oliver missed work on January 6, 2011, but there is no evidence that she notified Fielding that she would be absent.  Id.  Fielding sent an e-mail to Mia Parker[3] stating that Oliver was "not off to a good start for 2011," but he wanted to be "fair and have a good understanding of how to manage [Oliver's] time off going forward."  Dkt. # 45-21.  Oliver left work early on January 7, 2011 because she was "feeling very bad," and she did not come back to work for Williams after that date.  Dkt. # 36-5, at 2.  Fielding called Oliver on January 10, 2011 after she failed to report for work, and Fielding advised Oliver to contact CIGNA if she needed to take time off from work.  Id.  Oliver called CIGNA as Fielding suggested and she left Fielding a message advising him that she had spoken to CIGNA.  Id.  On January 11, 2011, Oliver told Fielding that she would be seeing her physician the next day, and Fielding did not speak to Oliver again until January 13, 2011.  Id.

On January 12, 2011, Williams sent Oliver a letter stating it had received notice of her claim for STD benefits and for FMLA leave, and it stated that she "may qualify for leave under the [FMLA]."  Dkt. # 45-19.  The letter contained no guarantee that Oliver was actually entitled to FMLA leave.  CIGNA sent Oliver a letter on January 13, 2011 stating that it was "undetermined" if Oliver was eligible for short term disability, but CIGNA had determined that Oliver was ineligible for FMLA leave because she had not worked the minimum number of hours in the preceding 12

---

[3]     The parties have not identified Parker's position but it appears that Parker was an employee of Williams who dealt with personnel matters.

months.   Dkt. # 45-6.  On January 13, 2011, Fielding spoke to Oliver on the telephone, and Oliver stated that she did not know when she would be returning to work and she would be seeking approval from her health insurer to seek treatment at the Baylor University Hospital (Baylor) in Texas.  Dkt. # 36-5, at 2.  Oliver left a voicemail for Fielding on January 14, 2011 stating that she had an appointment at Baylor on January 18, 2011.[4]  Id.  On January 24, 2011, Oliver told Fielding that she was returning from Baylor and that she had been diagnosed with a large ulcer.  Id.  Oliver stated that she might be able to return to work the following week if her medication helped, but she made no definite plans to return to work.  Id.  Oliver also had not submitted any note or record from her healthcare providers that she had been cleared to return to work.  Id. at 3.  Oliver claims that she believed that it was unnecessary to submit a doctor's note, because she had spoken to Fielding about taking paid time off and Fielding had not indicated that her employment was in jeopardy.  Dkt. # 45-17, at 3-4.  Oliver states that she had requested to use paid time off, but her deposition testimony shows that Fielding made no guarantee that such a request would be approved.  Dkt. # 45-1, at 36.  On January 25, 2011, Williams sent Oliver a letter notifying her that her employment was being terminated, because it was necessary to fill her position due to "on-going business needs."  Dkt. # 45-20.  Oliver inquired about her termination and her eligibility for FMLA leave.  On February 4, 2011, Williams sent a letter to Oliver explaining that it had reviewed the third party administrator's conclusion that Oliver was not eligible for FMLA leave, and Williams stated that Oliver had worked

---

[4]      Plaintiff claims that she told Fielding that she was going to Baylor and that she would call him when she returned, and she also claims that she was placed on STD by CIGNA.  The citation to the record in plaintiff's response does not support either statement.  Dkt. # 45, at 12.

1,248 hours in the 12 months preceding her request for FMLA leave.[5]  Dkt. # 45-23.  The minimum

hours needed to become eligible for FMLA leave is 1,250.

On September 25, 2012, plaintiff filed this case in Tulsa County District Court, alleging that

Williams discriminated against for exercising her rights under the FMLA.  Plaintiff asserted claims

under the Americans with Disabilities Act, 42 U.S.C. § 12010 et seq. (ADA) and the FMLA, and

she also alleged a state law claim for intentional infliction of emotional distress.[6]  Plaintiff's petition

does not expressly state whether she is alleging an FMLA claim under an interference theory, a

retaliation theory, or both.  Dkt. # 2-1, at 3-4.  Defendant removed the case to this Court based on

federal question jurisdiction.  Dkt. # 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored

---

[5]      Hamil testified in her deposition that plaintiff had worked only 1,071 hours in the 12 months preceding her termination.  Dkt. # 36-6, at 10.

[6]      The parties do not dispute that plaintiff fully exhausted her administrative remedies before filing this lawsuit.

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

### A.

Defendant argues that plaintiff was not eligible for FMLA leave in January 2011 and plaintiff cannot prevail on a claim for interference with her rights under the FMLA. Dkt. # 36, at 24-25. Plaintiff argues that defendant kept inaccurate records of the hours worked by plaintiff, and the burden shifts to defendant to establish that plaintiff failed to work the minimum number of hours required to become eligible for FMLA leave.

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). To establish an FMLA

interference claim, a plaintiff must show "(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." Jones v. Denver Pub. Sch., 427 F. 3d 1315, 1319 (10th Cir. 2005).  An employee may allege an FMLA interference claim based on interference with the right to take the full amount of FMLA leave, the denial of reinstatement after taking FMLA leave, or the denial of initial permission to take FMLA leave.  Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007).  Under an interference theory, an employer's intent in denying or interfering with an employee's FMLA rights is not relevant.  See Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004). Nonetheless, the FMLA is not a strict liability statute, and nothing in the FMLA entitles an employee to greater protection from termination not related to her FMLA leave.  Metzler v. Federal Home Loan Bank of Topeka, 464 F. 3d 1164, 1180 (10th Cir. 2006).

In this case, plaintiff is arguing that defendant interfered with her right to take FMLA leave in January 2011.  Plaintiff claims that defendant affirmatively represented to her at least twice that she had FMLA leave available, but it refused to allow her to take FMLA leave.  However, this aspect of plaintiff's argument is based on a misunderstanding of the evidence, and she confuses eligibility for FMLA leave with the amount of leave she could have taken if she established eligibility for FMLA leave.  Plaintiff argues that defendant affirmatively represented in September 2010 that she had 11 weeks of FMLA leave available, and defendant should be estopped from taking a different position in this case.  Courts have found that an employer can be liable under a theory of interference with an employee's FMLA rights if it gives incorrect advice about the amount of leave available or the manner in which eligibility is calculated.  Minard v. ITC Deltacom

Communications, Inc., 447 F.3d 352 (5th Cir. 2006); Ridgeway v. Royal Bank of Scotland Group, 2013 WL 1985016 (D. Conn. May 13, 2013). The September 2010 letter does state that plaintiff had 11 weeks and one day of FMLA leave available as of the date of the letter. However, the letter contains no guarantee that plaintiff would be eligible for FMLA leave if she failed to work the minimum numbers of hours to maintain eligibility for FMLA leave. Plaintiff also testified in her deposition that she was aware that eligibility for FMLA was calculated using a rolling 12 month period. Dkt. # 36-1, at 44. Nothing in the September 2011 letter could qualify as a guarantee or affirmative representation that plaintiff would have 11 weeks and one day of FMLA leave available at a future date if she failed to meet the minimum requirements to be eligible for FMLA leave, and the letter does not bar defendant from challenging plaintiff's eligibility for FMLA leave. Plaintiff also cites a March 8, 2011 letter stating that plaintiff had 24 hours of FMLA leave available. This letter was generated after plaintiff's employment had already been terminated, and it also states that plaintiff was ineligible for FMLA leave because of the minimum hour requirement. Dkt. # 45-24. In any event, the issue in this case is not the amount of FMLA leave that plaintiff could take but, instead, there is a dispute as to whether plaintiff was eligible for FMLA leave in January 2011. The Court does not find that defendant's representations about the amount of leave potentially available to plaintiff could be a basis to equitably estop defendant from challenging plaintiff's eligibility for FMLA leave.

Plaintiff argues that defendant kept inaccurate records or failed to provide all of the records to its third-party administrator, and this requires the Court to shift the burden to defendant to establish that plaintiff failed to work 1,250 hours before she requested FMLA leave in January 2011. It is generally the plaintiff's burden to establish that she was entitled to FMLA leave. Been v. New

Mexico Dep't of Information Technology, 815 F. Supp. 2d 1222 (D.N.M. 2011).  Plaintiff cites 29

C.F.R. § 825.110(c), which provides that "[i]n the event an employer does not maintain an accurate

record of hours worked by an employee . . . the employer has the burden of showing that the

employee has not worked the requisite hours."  There is an inconsistency in the record as to the

number of hours worked by plaintiff.  Hamil testified at her deposition that plaintiff had worked

1,071 hours in the 12 months preceding her request for FMLA leave, but defendant sent a letter to

plaintiff on February 4, 2011 stating that plaintiff had worked 1,248 hours.   This  suggests that

there is an inconsistency in defendant's record keeping and, viewing the evidence in a light most

favorable to plaintiff, the Court finds that there is a genuine dispute as to whether defendant kept

accurate records of plaintiff's time or if it supplied accurate records to its third-party administrator

for FMLA leave.  There is also evidence in the record that plaintiff contacted Fielding in January

2011 about her health condition, and plaintiff states in an affidavit that Fielding assured plaintiff that

her job was secure.  Dkt. # 45-34.  However, Fielding had already made inquiries about whether

plaintiff was eligible for FMLA leave and was aware that she might not be eligible.  Dkt. # 45-13.

 There  is  no  evidence  in  the  summary  judgment  record  that  plaintiff  was  warned  before  her

termination that her job was in jeopardy or that she could likely become eligible for FMLA leave

by working two more hours.  Although the Tenth Circuit has not expressly adopted equitable

estoppel in FMLA cases, it has noted that there are circumstances similar to this case in which the

doctrine has been applied to prevent a defendant from challenging a plaintiff's eligibility for FMLA

leave.  Banks v. Armed Forces Bank, 126 Fed. App'x 905, 907 (10th Cir. 2005)[7]; see also Kosakow

---

[7]      Unpublished decisions are not precedential, but may be cited for their persuasive value.  See
        Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 722 (2d Cir. 2001) (employee could have postponed surgery and obtained eligibility for FMLA leave, but employer intentionally failed to advise employee that she would not be eligible for leave if she proceeded with the surgery as scheduled).  This could be an appropriate case in which defendant could be estopped from challenging plaintiff's eligibility for FMLA leave, because a reasonable jury could find that defendant discouraged plaintiff from returning to work to become eligible for FMLA leave.  Even though plaintiff has not conclusively established that she was eligible for FMLA leave in January 2011,[8] she has raised a genuine dispute as to a material fact showing that equitable estoppel could prevent defendant from raising this defense, and defendant's motion for summary judgement should be denied as to plaintiff's FMLA interference claim.

## B.

Defendant argues that plaintiff cannot establish a causal connection between the FMLA leave she was permitted to take before January 2011 and her termination, and she cannot establish a prima facie case of FMLA retaliation.  Even if she could make out a prima facie case, defendant argues that there is no temporal proximity between her authorized FMLA leave and her termination, and its stated reason for terminating her employment was not pretextual.  Plaintiff responds that defendant's internal communications reveal that plaintiff's supervisors were looking for a way to terminate her employment, and she was terminated in retaliation for attempting to take FMLA leave in January 2011.

---

[8]     The Court notes that there is inconsistent evidence as to the number of hours worked by plaintiff, and she may be able to prevail on an FMLA interference claim at trial if she can show that she was actually eligible for FMLA leave in January 2011.

The FMLA prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). FMLA retaliation claims are subject to the burden-shifting framework of <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Campbell</u>, 478 F.3d at1287.   To make out a <u>prima</u> <u>facie</u> FMLA retaliation claim, a plaintiff must show that "(1) she engaged in a protected activity; (2) [her employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." <u>Metzler</u>, 464 F.3d at 1171.   The Tenth Circuit characterizes "the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer." <u>Campbell</u>, 478 F.3d at 1287 (quoting <u>Metzler</u>, 464 F.3d at 1171).   If plaintiff can establish a <u>prima</u> <u>facie</u> case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action.  <u>Id.</u> at 1290.  The burden shifts back to the plaintiff to "show that there is a genuine dispute of material fact as to whether [the employer's] reasons for terminating her are pretextual."  <u>Id.</u> (quoting <u>Metzler</u>, 464 F.3d at 1172).  To establish a genuine dispute of material fact as to pretext, a plaintiff cannot rely solely on temporal proximity of her FMLA leave and the adverse employment action, and the plaintiff must offer some other evidence of retaliatory motive. <u>Metzler</u>, 464 F.3d at 1172.

Defendant concedes the first and second elements of a <u>prima</u> <u>facie</u> case of FMLA retaliation, but it argues that there is no evidence of a causal connection between plaintiff's FMLA leave and her termination.  As to the third element, plaintiff argues that a January 11, 2011 e-mail shows that Fielding was looking for a way to terminate plaintiff's employment.  In the e-mail exchange, Fielding was communicating with Beck, a benefits analyst for Williams, about plaintiff's absence

from work and her uncertain eligibility for FMLA leave, and Beck stated that "I'll try to confirm . . . that what we bargained for is going to happen as expected." Dkt. # 45-13. In August and September 2010, Beck exchanged e-mails with Parker, and Beck expressed confusion as to why plaintiff was permitted to take time off in August 2010 when it appeared that she had exhausted her FMLA leave. Dkt. # 45-14, at 3. Beck noted that plaintiff had stated that she would return to work on June 3, 2010, but she her records also listed a return to work date of July 6, 2010. Id. at 2. Parker followed up on Beck's questions and found problems with the leave taken by plaintiff. Parker stated that plaintiff was supposed to return to work on June 3, 2010, but she did not return to work until July 6, 2010. Id. at 1. Plaintiff missed work from August 3 to August 16, 2010, but Unum had no record that plaintiff had filed a claim for FMLA leave. Id. at 1. However, plaintiff received a letter on September 14, 2010 congratulating her on her return to work, and the letter did not state that plaintiff had taken any unauthorized leave. Dkt. # 45-11. The Court has reviewed no evidence conclusively showing that plaintiff took any unauthorized leave before January 2011. The Court also takes into account the facts cited in reference to plaintiff's FMLA interference claim. In particular, Fielding was aware that plaintiff's absence from work could lead to her termination, but plaintiff claims that he assured her that her job was safe and that she could remain off work while she sought medical treatment. Beck's statement that "what we bargained for is going to happen," when viewed in light of other evidence, could support a finding that defendant was looking for a way to terminate plaintiff's employment for requesting FMLA leave. Plaintiff has produced evidence showing a causal connection between her protected activity and her termination, and plaintiff can establish a prima facie case of FMLA retaliation.

14

The burden shifts to defendant to come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment.  "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion."  EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992).  The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light."  Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007).  Defendant states that it terminated plaintiff's employment due to her failure to return to work.  Dkt. # 36, at 21.  This is a legitimate, non-discriminatory reason for terminating plaintiff's employment, and the burden shifts to plaintiff to show that defendant's stated reason is pretextual.

At this stage of the proceeding, the burden shifts to plaintiff to show that defendant's explanation for terminating plaintiff's employment is pretextual.  Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004).  "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."  Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)).  A plaintiff typically attempts to satisfy his or her burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"  Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).

A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988).

Viewing the evidence in a light most favorable to plaintiff, the Court finds that plaintiff has produced evidence raising a genuine dispute of material fact calling into question whether defendant's stated reason for terminating her employment was pretextual. Plaintiff argues that she requested FMLA leave in January 2011 and that there is a temporal relationship between her protected activity and her termination. Dkt. # 45, at 30. This can be evidence of pretext in a retaliation case. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1001 (10th Cir. 2011). Beck's statement to Fielding that "what we bargained for is going to happen," viewed in light of his prior e-mails to Parker, could suggest that defendant's employees had internally discussed the possibility of plaintiff's termination before she requested FMLA leave in January 2011. Beck's e-mails to Parker also suggest that defendant was dissatisfied with the amount of leave taken by plaintiff, and this supports a finding that defendant's termination of plaintiff's employment was retaliatory. The Court also takes into account the evidence tending to show that plaintiff needed only two more hours of work to become eligible for FMLA leave, and defendant failed to give plaintiff all of the information she needed to determine whether to proceed with her surgery as planned. Defendant's explanation that it needed a person to fill plaintiff's busy position is reasonable, but this does not excuse defendant's failure to give plaintiff accurate information about her FMLA leave status. There is sufficient evidence from which a reasonable jury could find that plaintiff's employment was terminated in retaliation for exercising her rights under the FMLA, and defendant's motion for summary judgment is denied as to plaintiff's FMLA retaliation claim.

**C.**

Defendant argues that plaintiff was not qualified to perform her job due to her irregular attendance, and she cannot establish a prima facie case of disability discrimination. Defendant also asserts that it terminated plaintiff's employment due to its belief that she was not eligible for FMLA leave, and there is no evidence that it fired plaintiff because of her disability. Plaintiff argues that defendant discriminated against her because of a disability, because defendant interfered with her right to take FMLA leave and made misleading statements to plaintiff about her job security.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination can be shown by direct or circumstantial evidence. See Reinhardt v. Albuquerque Public Schools Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010). ADA discrimination cases based on circumstantial evidence are governed by the burden-shifting framework announced in McDonnell Douglas. Morgan, 108 F.3d at 1323. In order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate:

> (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability.

Id. at 1324 (internal citations omitted). Pursuant to this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If she does so, "then the defendant must offer a legitimate, non-[discriminatory] reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Metzler,

17

464 F.3d at 1170 (citations omitted).  In order to defeat a motion for summary judgment, the plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief."  Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Defendant concedes for the purpose of the motion for summary judgment that plaintiff was disabled.  Dkt. # 36, at 18 n.1.  However, it disputes that plaintiff was qualified to perform the essential functions of her job or that plaintiff's employment was terminated under circumstances giving rise to an inference of disability discrimination.  Defendant argues that regular and punctual attendance at work was an essential function of plaintiff's job, and attendance can be essential job function.  Mason v. Samson Resources Co., 525 Fed. App'x 703, 708 (10th Cir. May 8, 2013).[9] Plaintiff responds that FMLA leave can be considered a reasonable accommodation and that she could have maintained her employment if her request for FMLA leave had been granted.  Dkt. # 45, at 22-23.   A limited amount of leave for medical treatment can be considered a reasonable accommodation.  Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 967 (10th Cir. 2002). There is a genuine dispuate as to whether plaintiff was entitled to FMLA leave and, for the purpose of defendant's motion for summary judgment, the Court will assume that plaintiff could have performed her job with a limited amount of FMLA leave.  For the purposes of this Opinion and Order, the Court will also assume that plaintiff can establish the final element of her prima facie case, and the Court will proceed with the burden-shifting analysis.  See Leibforth v. Belvidere Nat'l Bank, 337 F.3d 931, 933 (7th Cir. 2003) (district court can presume that prima facie case is

---

[9]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

established and dispose of claim on other grounds).  As the Court has previously stated, defendant has provided a legitimate, non-discriminatory explanation for terminating plaintiff's employment - that she was not entitled to FMLA leave and that she failed to return to work - and the Court will consider whether plaintiff can show that this explanation is pretext for disability discrimination.

Plaintiff relies on the same arguments to show pretext for her disability discrimination claim as she did in the context of her FMLA retaliation claim.  However, those arguments to not support a finding that defendant discriminated against plaintiff because of a disability.  The evidence shows that defendant honestly, even if possibly mistakenly, believed that plaintiff was not entitled to FMLA leave, and the record is clear that the reason for plaintiff's termination was her failure to return to work in January 2011.  Rivera v. City and County of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004) ("The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs).  The evidence shows that plaintiff had a history of missing work and that defendant was concerned that plaintiff's irregular attendance at work was disrupting defendant's business.  While plaintiff may have missed work due to a medical condition, the FMLA and ADA protect an employee against different types of discrimination.  As stated in Hoge v. Honda of America Mfg., Inc., 384 F.3d 238 (9th Cir. 2004), "[t]he ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." Id. at 249.  Plaintiff has produced no evidence that her disability was a motivating factor in her termination, because this is not a case where a disability prevented her from performing certain job functions.  Instead, she completely failed to report to work and her absences, not her underlying medical condition, prompted defendant to terminate her employment.  Plaintiff's right to medical leave is protected by the FMLA, not the ADA, and the

19

Court has found that there is a genuine dispute as to whether plaintiff was entitled to FMLA leave. In addition, the Court notes that plaintiff's last day of work was January 7, 2014 and her employment was not terminated until January 25, 2014, and she effectively received an accommodation in the form of unpaid leave during this period before her employment was terminated. While limited medical leave could be a reasonable accommodation, "an employer is not required by the ADA . . . to provide an unlimited absentee policy." Brannon v. Luco Mop Co., 521 F.3d 843, 849 (8th Cir. 2008). Plaintiff gave no indication to defendant when she intended to return to work, and it appeared to defendant that plaintiff was taking unlimited medical leave and that plaintiff was not eligible for such leave under the FMLA. The Court finds no evidence suggesting that defendant's legitimate, non-discriminatory reason for terminating her employment was pretext for disability discrimination, and defendant is entitled to summary judgment on plaintiff's ADA claim.[10]

## D.

Defendant argues that plaintiff has no evidence showing that it engaged in extreme and outrageous conduct, and plaintiff cannot prevail on a claim of intentional infliction of emotional distress under Oklahoma law. Dkt. # 36, at 28. Plaintiff has not responded to this argument and it is possible that she has abandoned her intentional infliction of emotional distress claim. Even though plaintiff has not argued in support of this claim, the Court will consider whether summary judgment is appropriate on the merits of his intentional infliction of emotional distress claim.

---

[10]    Plaintiff seeks relief under the ADA for disability discrimination and for an alleged failure to accommodate her disability. The Court does not separately deal with her failure to accommodate claim because, as a matter of law, she has not shown that she requested a reasonable accommodation. See Brannon, 521 F.3d at 849 (unlimited medical leave is not a reasonable accommodation under the ADA).

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff.  See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Although the Court has found that there is a genuine dispute as to whether plaintiff was entitled to FMLA leave in January 2011, there is no evidence that defendant engaged in extreme and outrageous conduct.  Defendant believed that plaintiff was not entitled to FMLA leave and, even if this belief was mistaken, defendant did not harass plaintiff about her decision to stop coming to work after January 7, 2011.  There is also no evidence that defendant engaged in improper conduct in regard to plaintiff's prior requests for leave and, in fact, it welcomed her back to work in September

2010 when she returned from FMLA leave.  Dkt. # 45-11.  The Court finds no evidence that defendant engaged in extreme and outrageous conduct, and defendant's motion for summary judgment should be granted as to plaintiff's intentional infliction of emotional distress claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 36) is **granted in part** and **denied in part**: the motion is granted as to plaintiff's ADA and intentional infliction of emotional distress claims, but it is denied as to plaintiff's FMLA claims.

**DATED** this 4th day of April, 2014.

_Claire V Eagle_

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

23